Our final case on this morning's docket is Beyond Blond Productions v. ComedyMX, and I believe we're back on video if I'm not mistaken. Good morning, your honors. May it please the court, I'm Randall S. Newman for the appellant, ComedyMX, LLC. So we are here on an appeal of a denial of a plenary injunction, as well as a motion to strike and a motion to consolidate. What we're looking for is for the court to vacate the order denying the plenary injunction with the finding that the court applied the wrong legal standard because she applied the standard for a mandatory injunction instead of a prohibitive injunction. Counsel, basically it seemed to me that you styled it as a motion for a preliminary injunction on your own behalf, but basically you were asking the court to reconsider the injunction that was entered in favor of your opponent and saying, well, we've got new stuff here that shows that you made a mistake a year ago. So isn't this at least in part a motion to reconsider or to modify or vacate a previous injunction? Well, the first injunction was really based upon DMCA takedown notices that my client had sent Beyond Blond, and this is based purely on trademarks. So I don't believe that it's reconsideration. But the court treated it that way. The decision says, well, the new information doesn't convince me that I made a mistake a year ago. I mean, isn't that essentially what you were asking the court to do was to reverse course from what it had done previously based on new information? That's what she found, but we believe it was just another power request for a preliminary injunction. It was, but it doesn't have to be one or the other. It can be both, can't it? It could be both, yes. I think the copyright part of it was off the table when we filed the motion for a preliminary injunction, and we focused on the trademark aspect of the case. So we would like the court also to state that my client has made a showing on the merits that the design mark is valid and inherently distinctive, and that the court erred in failing to correctly determine the validity and strength of the mark, and that necessarily erred when it then did an assessment of likelihood of confusion. And we also believe that Common EMAX established the likelihood of confusion and thus the likelihood of success on the merits, and the court erred because it failed to consider or correctly apply the rebuttable presumption of irreparable harm under the amended Section 34A or any of the other winter factors, such as the balance of equities and public interest. In any event, the court's error in failing to correctly assess the validity and strength of the design mark infected and distorted the rest of the analysis regarding all the winter factors. So we ask that the court remand the district court with instructions to conduct further proceedings to correctly assess the validity and strength of the design mark, which infected and distorted the rest of the analysis regarding the winter factors. Now, we have a couple of procedural issues, because after the court denied the preliminary injunction, she granted the motion to dismiss. So we filed an amended Notice of Appeal, as well as a new Notice of Appeal, and we're asking the court to consolidate the cases so they can consider the denial of the preliminary injunction, as well as the judge granting the motion to dismiss. Excuse me. I have a procedural question for you, and I know you don't agree with this, but if we were to affirm on the merits of what the district court did here, what would be left of the various appeals and so on and so forth? If you were to affirm and say that we don't have a valid and protectable mark, then I think it would be moved. But I think the validity of the mark is intertwined with the preliminary injunction, as well as the dismissal. So we first have to make a determination whether or not the mark is valid. Right, but procedurally, if we were to affirm, that would basically end the case, correct? Well, it depends on the reason for affirming. If you affirmed by saying that there was no likelihood of confusion, it would be different than if you said the trademark wasn't valid. Well, I guess if you affirmed on one basis, it would leave the appeal of the granting of the motion to dismiss until the end of the case. But if you decided the validity of the trademark now, that would then deal with both issues currently, and then we wouldn't have an appeal at the end. Well, what was the – the district court granted an injunction to Beyond Blonde, is that correct? Correct. And that was on what basis? It was on two bases. I think that they didn't have a trademark – copyright claims. Yeah. And the – there was no likelihood of confusion on the trademark. Trademark. And so do they still have a claim if we were to affirm? The injunction would still be in place. And is there still an underlying claim for damages against your client? They have, yes. Well, there's a 512F claim for misrepresentation of copyright, as well as a claim for declaration of non-infringement of the trademark, as well as a declaration of copyright invalid. Because it's a preliminary injunction, so there would eventually be a trial. But the rest of the case would be gone, though. Correct. Counselor, let me ask. When the preliminary injunction was granted and you took the appeal, why didn't you just go back to the district court and say, we move to dissolve this and flesh out your record a little better and talk about the validity of your mark and all these other things at that stage? Well, there was no appeal the first – when she granted the preliminary injunction. I thought that's what we're here for. No, we're here for the second – a year later. A year later, you moved for a preliminary injunction. Correct, right. I was mistaken. Thank you. So we're also here on the motion to strike because Beyond Blonde introduced evidence in the record in this appeal that wasn't before the court. So those are the two motions. They also filed a motion to dismiss the appeal based on mootness. So those are the procedural reasons we're here. And so as to the merits of the preliminary injunction, we believe that the district court made numerous errors, including errors of law, that are reviewed de novo, including the improper dissection of the trademark or the design mark and failure to consider the composite as a whole as required by Booking.com. She also found that cartoon classics was generic, but we believe it's suggestive, but at least descriptive, as the court found. And combined with the googly eyes of the cartoon, we believe that the design mark is inherently distinctive and strong, as the trademark examiner found and the trademark examiner in Australia and U.K. found. And Beyond Blonde's evidence of genericness is irrelevant because they're not in the same class of services as ours. I mean, yellow cab in a taxi company is one thing, but yellow cab pizza is a completely different class of services. You couldn't introduce evidence that yellow cab is generic when it comes to a taxi if we're using it in a completely different class of services. I also forgot to reserve some time for rebuttals, so can I do that now? Yes, just any time that's left over is yours to use now or later. You have about four minutes and change. Yeah, can I reserve what's left for rebuttals? You certainly may do that. And we'll hear next from the appellees. Good morning, Your Honors. May it please the court. I am Malurk Kishishian, and I represent the appellees Michelle Justice and Beyond Blonde Productions, LLC. During the start of the pandemic, when people were staying home watching TV, defendants concocted a plan to take down its rival by issuing baseless takedown notices to Amazon. After Amazon would not restore the content, Beyond Blonde moved for a preliminary injunction mandating that defendants withdraw their takedown claims to Amazon, which the court granted, finding that there was no likelihood of confusion between the two marks. Appellants argue that the court improperly dissected the marks and viewed them in different portions, but that is not incorrect based on just a plain reading of the court's order. And I quote, Moreover, the marks here contain different colors, different fonts, different capitalizations and punctuations, different arrangement and different eye styles, referring to the docket and the evidence therein. The court then continues, and I quote, The court concludes that the visual appearance of the marks on the whole as used in the marketplace is noticeably different, particularly given the actual words cartoon classics is generic, not protectable, and specifically excluded from defendant's trademark application. End quote. Cartoon classics has been used by Disney, Looney Tunes, MCA, RCA in a generic sense to identify cartoon classics, which are a genre of older cartoons. Thus, on the spectrum of protection, on one end, generic words such as cartoon classics to describe streaming of cartoon classics is not protectable. If they wanted to use a trademark that was protectable, they would use eighthmandvd.com, which is the appellant's actual registered trademark. So if you look at page 28 of our brief, we show how they use it in commerce on their actual videos on YouTube, where eighthmandvd.com is the trademark and cartoon classics refers to the content of the videos. So they have no protectable interest in the term cartoon classics. Further, the court found that by adding cartoonish eyes instead of the double O's in cartoon, there was no distinctiveness added to the term cartoon classics and the entirety of the mark was generic. If in accordance with this court's ruling in Kendall Jackson Winery, adding a leaf, a grape leaf to a bottle of wine is generic. So is adding cartoon eyes to the term cartoon classics, which then would not distinguish appellant's trademarks from any other trademark that uses the term cartoon classics. For example, expanding on the Kendall Jackson ruling, if somebody used the word red wine and instead of the W, added a grape leaf to use it on red wine, that would continue to be generic. I understand that appellants make a big deal of our reference to the Ninth Circuit's unpublished opinion in the Lip Sync case, where the parties had used lips as part of their logos on a lip syncing contest on television. This court determined that the mark was still generic because lips indicated that the product was lip syncing. Here, similarly, the district court correctly determined that cartoon classics, even adding the googly eyes or the cartoon eyes, was still a non-distinctive and generic use of the generic design. With respect to the court's indication that defendant or appellant's preliminary injunction motion was basically a motion for reconsideration, disguised as a preliminary injunction, the court is correct. They could have presented this new evidence that they claim was not available during the preliminary injunction briefing on beyond law's preliminary injunction motion. The court did not abuse its discretion in excluding the Keegan survey, as many other courts have questioned whether Keegan even qualifies as a survey expert, and numerous other courts have excluded Keegan's surveys as being flawed and not properly designed. In fact, our trademark survey expert, Dr. Petulis, properly noted and pointed out the flawed design of the Keegan survey. First, even a design trademark is questioned as being generic, and it's not a registered trademark, which is the case here. The trademark owner has the burden of proof in establishing that the mark is not generic. Keegan's survey could have easily been done to determine where on the spectrum of protection the cartoon classics design falls, but he chose not to. As the court properly noted, Keegan's survey was flawed because it did not distinguish any confusion between the actual words cartoon classics, which is generic, and the design. In fact, the court, I believe, found only 2.7% of the survey participants mentioned the design. Most of the respondents stated that they thought that the two products emanated from the same source because they used the term cartoon classics, which is generic and not protected. In other words, the real similarity between these two marks are the words cartoon classics, and that's generic. Isn't that really the heart of it? That's correct. Even the eyes are different, the designs are different, the fonts are different, and where you use generic words in a design mark, then you're only entitled to a picture image of that design, which the trademark office examiner requested that they disclaim the cartoon classics portion, the words themselves, because they were descriptive of the product, the cartoon classics that they're streaming. And where you have a picture design, then there could only be trademark infringement where there's exact copy. That's assuming that they even have a protectable trademark. There was no exact copying in this case, and just a plain-eye view of the two designs as the court provided side-by-side, there is no similarity between the two designs. The second piece of evidence that defendants claimed was new was a declaration by a trademark attorney opining on the law, which the court did not abuse its discretion in excluding because it did not add any analysis to the case that would aid in reconsideration of its prior grant of the preliminary injunction. The third piece of evidence, which counsel also just mentioned in oral argument, was registrations in foreign trademark offices, and it's axiomatic in established law that trademark protection in different countries has no bearing on a case here in the United States, especially where the district courts already determined that cartoon classics is generic and unprotectable. The district court also did not abuse its discretion in denying the motion for reconsideration based on the foreign registrations, and did not abuse its discretion in excluding that evidence from the record. I think we understand your position pretty well. With respect to the mootness issue, Your Honor, we filed a motion to dismiss because in the interim, the district court granted the en blanc motion to dismiss the trademark infringement counterclaims with prejudice, thus rendering this appeal moot because it divests jurisdiction from this court. If there are no further questions, I would rest my case. Thank you, counsel. I believe opposing counsel has some rebuttal time remaining. Yes, I'd just like to address a few points. First, we don't believe the district court can divest the appeals court of jurisdiction by dismissing an underlying claim. The en blanc doesn't cite a single case where it's the same procedural position we're in. As a matter of fact, ARC of California specifically says that if it's intertwined, you can hear both motions at the same time. And just because she did it, the district court dismissed months after the denial of the preliminary injunction, it contains the result. ARC of California, the court dismissed them at the same time. This is a few months apart. That does not change whether or not it moots this appeal. Secondly, the disclaimer that we had to make in the trademark application under 15 U.S.C. 1056B can't be used as evidence of genericness as the en blanc claim. And as the district court found, to use it as a basis to say it was generic. The other thing is that this trademark would be registered had the en blanc not contested it after they filed this case. Had my client understood the trademark process better, we wouldn't be here because he would have waited until after it actually issued instead of being published before he did the takedown on the suit. The other thing is that these trademarks have the same sound, the same meaning, they have the exact same video. It's not like our videos are Popeye, Bugs Bunny. I don't understand why that is even relevant because, well, I don't understand why it's relevant for many reasons. But let's say you want to print and sell copies of very old novels that are no longer protected by copyright. And two or three different publishers all want to sell them. So they sell the same ones. So what? And they all say, we sell old novels, you know, in big capital letters or blue in one case and purple in another. I mean, so what? Well, ours is a design mark. We're not complaining about the fact that they have the same video. Well, you just were. That's why I was asking the question.  And that's why I asked the question. Because it's the same. She basically, Yann Blanc, took our business from YouTube, copied the design mark, copied the video, and went to Amazon and did the same thing. If she didn't use a cartoon classic design mark with the googly eyes, we wouldn't be complaining about it. It's very similar. I mean, it's not identical. I agree with that. But it's very similar to the point where it could create a likelihood of confusion. And the Keegan did a survey that showed that consumers were confused. So if they had something that just says, old cartoons you'll love in, you know, bright neon, you'd be not here, right? Correct. Correct. And they could do the same thing, all the same cartoons, old cartoons you'll love. Correct. Really, you're complaining. That's why it seems to keep circling around that you're claiming that cartoon classics is not generic, but that isn't the issue in front of us. How is it not the issue in front of you? Well, I guess it is if we're looking at the whole package. So if we're looking at the whole package and not just the trademark piece, then I guess it is. Correct. I mean, because it's on the motion to dismiss, she said that it was generic and that we didn't have a valid trademark. How could our design mark be generic for classic cartoons? I mean, nobody recognizes artists for all classic cartoons as a class of services for Internet streaming. I don't believe that. Even if classic cartoons' term is generic, our design mark isn't generic. Understood. I think you've exceeded your time, and I do think we understand your position fully. Okay. Thank you. Thank you, counsel. The case just argued is submitted. We thank you both, and we stand adjourned for this morning's session. Thank you. Yes. Excuse me.
judges: SCHROEDER, GRABER, McNamee